1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**NORTHERN DISTRICT OF CALIFORNIA**

7

8    TIMOTHY RALPH CARRILLO,          Case No.  15-cv-0997-TEH

              Petitioner,

9

10        v.                          ORDER DENYING PETITION FOR
                                      WRIT OF HABEAS CORPUS; DENYING
11   JIMMY SMITH,                     CERTIFICATE OF APPEALABILITY

              Respondent.

12                                    Dkt. Nos. 32, 35

13

14        Timothy Carrillo, a state prisoner, has filed this pro se

15   petition seeking a writ of habeas corpus under 28 U.S.C. § 2254.

16   Respondent was ordered to show cause why the petition should not

17   be granted.  Respondent has filed an answer and Petitioner filed

18   a traverse.  For the reasons set forth below, the petition is

19   DENIED.

20                                    I

21        A jury convicted Petitioner of multiple counts of grand

22   theft, theft from an elder adult, first degree burglary, and

23   other related counts.  People v. Carrillo, No. H037487, 2014 WL

24   69041, at *1 (Cal. Ct. App. Jan. 9, 2014).  Petitioner was found

25   to have a prior strike conviction and was sentenced to 35 years

26   in prison, consecutive to a 25-year term that Petitioner was

27   serving in Texas.  Id.

28

United States District Court
Northern District of California

The California Court of Appeal affirmed the conviction. Carrillo, 2014 WL 69041, at *1.  The California Supreme Court denied a petition for review.  Answer, Exs. 2, 3.

## II

The following factual background is taken from the order of the California Court of Appeal:[1]

> Posing as a licensed contractor, defendant entered into painting, roofing, and other repair and renovation contracts with elderly homeowners from 2006 through 2008 and took thousands of dollars in payment from them without performing any of the work he promised.  He was on parole and/or on probation when he committed these offenses.

> On May 2, 2007, the first of three cases alleging numerous theft-related felonies and contracting without a license was filed against defendant.  In late 2007, there were warrants outstanding for his arrest in that case and for violating his probation in a 2005 misdemeanor driving under the influence (DUI) case by failing to enroll in a first offender DUI program.  Defendant was apprehended on March 4, 2008, and released on bail that same day.  On March 12, 2008, the trial court informed him of the charges in the felony case and revoked his probation in the DUI case "to retain jurisdiction."

> Two additional felony cases alleging theft-related crimes and contracting without a license were filed in 2008.  On September 25, 2008, defendant failed to appear for arraignment in the three felony cases and on the probation violation in the DUI case.  The trial court ordered his bail forfeited, revoked his probation, and issued a bench warrant for his arrest.

> In March 2009, the bail bondsman successfully moved to vacate the bond forfeiture on the ground that defendant was incarcerated in Texas.  The district attorney told the court it had "a hold" on defendant, who would be

---

[1] This summary is presumed correct.  Hernandez v. Small, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

United States District Court
Northern District of California

transported to Monterey County once charges pending against him in Texas and in Alameda County were resolved.

On January 22, 2010, the Texas Department of Criminal Justice (TDCJ) wrote the Monterey County and the Santa Cruz County Sheriff's offices that "[n]otations have been made on our records indicating that [defendant] will be wanted by your office upon release from this institution." The TDCJ gave defendant copies of both letters with notices describing his rights under the IAD.

In a December 23, 2010 letter to the Monterey County Superior Court in Salinas, defendant asserted that he had "received detainers from your county as well as Santa Cruz County on 1-22-10 and filed the attached Request for final disposition on All untried indictments, informations or complaints from your state which I have heard nothing from your county." Defendant wrote that he was "again requesting final disposition of all indictments, informations and complaints from your county. . . . Please Acknowledge receipt of this letter and send me any further forms necessary to complete my request." The "attached Request" that defendant referred to is not included in the record on appeal.

In a March 7, 2011 letter to the clerk of the Monterey County Superior Court in Salinas, defendant wrote, "Enclosed is an official updated Time sheet stating term being served, Good Time earned and parole eligibility, please Add to file for your records. An additional copy will be sent to the District Attorney's office for Mr. Pesenhofer. The Enclosed is final paperwork require by I.A.D.A. [¶] Please send response stating you have received the enclosed Timesheet."

In a March 21, 2011 letter to the Monterey County Superior Court, defendant wrote, "In addition to letter sent on 3-7-11 I am requesting pro se that no continuances be granted without my presence as well as no waivers of any rights without my actual presence in court. . . . [¶] The above is regarding my rights under the Interstate Agreement on Detainers Act, which the Court received on Feb 22, 2011."

On April 1, 2011, Monterey County Deputy District Attorney Glenn Pesenhofer signed and

dated a "Form V—Interstate Agreement on Detainers—Request for Temporary Custody." Addressed to the TDCJ, the form sought temporary custody of defendant "pursuant to Article IV(a) of the [IAD]." Monterey County Superior Court Judge Timothy P. Roberts signed and dated the form on April 4, 2011, certifying that Pesenhofer was "an appropriate officer within the meaning of Article IV(a) and that the facts recited in this request for temporary custody are correct and that having duly recorded said request I hereby transmit it for action in accordance with its terms and the provisions of the IAD." Despite Pesenhofer's and Judge Roberts's handwritten attestations that they signed Form V in April 2011, the clerk's file stamp indicated a filing date of April 4, 2010—exactly one year before Judge Roberts signed the form.

Defendant arrived in Monterey County from Texas on June 20, 2011, "or there abouts [sic ]." At the beginning of his preliminary examination on July 1, 2011, his counsel moved to dismiss all charges on the ground that defendant had invoked his rights under section 1389 "over a year ago" and had not been brought to trial within the 180-day period prescribed by the statute. Counsel claimed that defendant had "forwarded a request, in February [2010], to the warden of the institution in which he was housed in Texas to ask that he be brought to Monterey County in order to face the charges. . . . And no response was ever received from Monterey County, nor was he transported until earlier this year, which, again, was more than 180 days after his initial request." The trial court deferred a ruling for failure to properly notice or brief the motion. The preliminary examination proceeded, and defendant was held to answer.

Defendant filed a properly noticed section 1389 motion to dismiss on July 11, 2011. In his motion papers, he asserted that upon learning that Santa Cruz and Monterey counties had lodged detainers against him, he "promptly initiated an [IAD] request, and this written request along with the required paperwork was forwarded to Santa Cruz County on March 19, 2010." "See Exhibit C, affidavit of TDCJ IAD Department employee," defendant's motion papers stated, explaining in a footnote that the affidavit was

"forthcoming" and would be submitted "separately in advance of the motion hearing date." There is no evidence in the record that any such affidavit was ever provided to the trial court, and it is not included in the record on appeal.

In his motion papers, defendant also contended "that he also promptly initiated an IAD request with regard to the Monterey County detainer in February or March 2010, however, TDCJ has no information with regard to that request; TDCJ only shows that notice of the detainer was sent to [defendant] on January 22, 2010."

The district attorney opposed defendant's section 1389 motion on the ground that there was "absolutely no showing" of compliance with the IAD's procedural requirements. The notices of detainer from the TDCJ that defendant attached to his motion were "incomplete documents," the district attorney pointed out. "The signature and date pages have been excluded, and one could argue the reason for their exclusion is because they are not favorable to the defendant's position." Defendant's assertion that Santa Cruz County had dismissed its case against defendant and cancelled its detainer, the district attorney argued, "doesn't provide any proof of proper notice to the Santa Cruz County District Attorney's Office," but "only show[s] that Santa Cruz [County] Superior court dismissed the case."

The parties submitted the matter on the papers, and the trial court denied the motion. "I do not feel that there is sufficient evidence to compel the Court to dismiss the matter," the court explained.

The parties proceeded to trial, and defendant was convicted and sentenced as previously described. He filed a timely notice of appeal.

Carrillo, 2014 WL 69041, at *1-3 (footnote omitted).

### III

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any

United States District Court
Northern District of California

claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Additionally, habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal quotation marks omitted).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court

making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.  Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Felkner v. Jackson, 562 U.S. 594, 598 (2011).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

When applying these standards, the federal court should review the "last reasoned decision" by the state courts.  See Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  When there is no reasoned opinion from the state's highest court, the court "looks through" to the last reasoned opinion. See Ylst, 501 U.S. at 804.

7

1   With these principles in mind regarding the standard and

2   scope of review on federal habeas, the Court addresses the sole

3   claim in the petition.   Petitioner alleges that the trial court

4   erred in denying his motion to dismiss for failure to comply with

5   California's codification of the Interstate Agreement on

6   Detainers ("IAD").

7                                   IV

8   The IAD, codified under California statutory law by section

9   1389, is "an agreement between California, 47 other states, and

10  the federal government," facilitating the resolution of

11  detainers, based on untried indictments, informations or

12  complaints filed in one jurisdiction, against defendants who have

13  been imprisoned in another jurisdiction.   People v. Lavin, 88

14  Cal. App. 4th 609, 612 (2001).   Under the IAD, "'[a] detainer is

15  a notification filed with the institution in which a prisoner is

16  serving a sentence, advising that he is wanted to face pending

17  criminal charges in another jurisdiction.'"   Id., at 612, quoting

18  United States v. Mauro, 436 U.S. 340, 359 (1972) (alteration in

19  original).   The lodging of a detainer is more than mere notice

20  that an inmate is wanted in another jurisdiction.   A detainer

21  asks the institution to "hold the prisoner for the agency or to

22  notify the agency when release of the prisoner is imminent."

23  People v. Oikine, 79 Cal. App. 4th 21, 23 (1999).   A "formal

24  detainer" must be filed before an inmate may invoke the

25  provisions of the IAD.   People v. Rhoden, 216 Cal. App. 3d 1242,

26  1251 (1989).

27  The IAD establishes a procedure under which a prisoner,

28  against whom a detainer has been lodged, may demand trial within

United States District Court
Northern District of California

United States District Court
Northern District of California

180 days of a written request for final disposition properly delivered to the prosecutor and appropriate court of the prosecutor's jurisdiction. Cal. Penal Code § 1389, Art. III(a); <u>Lavin</u>, 88 Cal. App. 4th at 612.

If the state receiving the detainer request fails to act in compliance with the IAD, or "in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV," an order shall be entered dismissing the pending criminal charges with prejudice. Cal. Penal Code § 1389, Art. V(c); <u>People v. Brooks</u>, 189 Cal. App. 3d 866, 872 (1987).

"In order to take advantage of the sanction of dismissal, the prisoner must comply with the procedural requirements of the IAD." <u>Lavin</u>, at 616; <u>see also</u> <u>Johnson v. Stagner</u>, 781 F.2d 758, 761-62 (9th Cir. 1986).  The procedures for prisoner-initiated transfers are found in Article III.

> "'"Article III, subdivision (a) provides that the 180-day period is to run from the date the prisoner 'shall have caused to be delivered' a written notice and request for final disposition to the district attorney and the court.  Article III, subdivision (b) clearly states that the prisoner shall give or send the notice and <u>request to the warden, commissioner of corrections or other official having custody of the prisoner</u>." [¶] The warden then prepares a certificate "stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."  (§ 1389, Art. III, subd. (a).)'"

<u>Lavin</u>, at 616 (citation omitted).  The prisoner has the burden to

1   show that a request for a speedy trial has been made.  See United

2   States v. Moline, 833 F.2d 190, 192 (9th Cir. 1987).

3       The California Court of Appeal set forth the relevant

4   background and denied Petitioner's claim that the trial court

5   erred in denying his motion to dismiss:

6           Defendant claims the trial court
    prejudicially erred and violated his federal
7   and state constitutional rights to a speedy
    trial and to due process when it denied his
8   section 1389 motion to dismiss the charges
    against him.  The Attorney General responds
9   that defendant failed to show he complied
    with the IAD's provisions and thus has not
10  established that the 180-day period
    prescribed by the IAD was ever triggered.  We
11  agree with the Attorney General.

12          . . .

13          Defendant argues that the trial court erred
    in denying his section 1389 motion, since he
14  "made a valid demand for trial in California"
    in early 2010.  We find nothing in the record
15  to support that claim.  The letters that
    defendant sent to the district attorney
16  and/or to the superior court were dated well
    after the request he claimed to have made "in
17  February or March 2010" and were in any event
    ineffective to invoke his rights under the
18  IAD because, among other deficiencies, they
    were not sent through the warden of the Texas
19  prison.  (Castoe, supra, 86 Cal.App.3d at p.
    490   ["Article III ... does not permit a
20  prisoner's self-help effort to start the
    running of the 180-day period."]; accord,
21  Lavin, supra, 88 Cal.App.4th at pp. 616-617
    [demand sent directly to the court was
22  "clearly insufficient to invoke the time
    period of section 1389"].)

23          In his motion below, defendant purported to
24  rely on a "forthcoming" affidavit of a "TDCJ
    IAD Department employee," but no such
25  affidavit was ever produced, and defendant
    was forced to concede that the TDCJ had "no
26  information" about the IAD request that he
    claims to have made "in February or March
27  2010." (Italics omitted.)  Thus, no evidence
    supports his claim that he made a valid IAD
28  demand "in February o[r] March 2010."

United States District Court
Northern District of California

Defendant argues, however, that the Santa Cruz County Superior Court's May 26, 2010 dismissal of its case against him and the TDCJ's subsequent cancellation of Santa Cruz County's detainer "establishes that [defendant] properly presented his demands for trial to the warden of the Texas prison, who would have been required to forward them, along with the certifications, to both the Santa Cruz County authorities and the Monterey County authorities." We are not persuaded. The minutes of the May 26, 2010 hearing state that the Santa Cruz charges against defendant were "dismissed in the interest of justice." They establish nothing more than that.

Defendant argues that the IAD request he claims to have made "in February or March 2010" must have been delivered to Monterey County because "the district attorney responded by requesting [defendant's] temporary custody in a form filed on April 4, 2010." The argument lacks merit.

It is pure speculation that the form defendant relies on was sent in response to any sort of communication from him. It is doubtful, moreover, that the form was "filed on April 4, 2010." Entitled "Form V—Interstate Agreement on Detainers—Request for Temporary Custody," the form was signed and dated by Pesenhofer and by Judge Roberts on April 1 and April 4, 2011. The file stamp indicates a filing date a year earlier, on April 4, 2010.

"The significance here," defendant urges, "is the filing date of April 4, 2010." This is his only reference to the obvious disparity between the "2010" file stamp and the "2011" dates that Pesenhofer and Judge Roberts both handwrote next to their signatures. Defendant does not attempt to explain how Pesenhofer and Judge Roberts, who signed and dated the request three days apart, could both have gotten the year wrong. He simply assumes that the 2010 file stamp date is the correct one. We find the assumption insupportable.

We think it is far more likely that the filing date stamped on the document was the result of clerical error. Pesenhofer signed the request for temporary custody on April 1,

11

2011.  Judge Roberts signed it three days later, on April 4, 2011.  The date Judge Roberts handwrote on the document and the date the court clerk stamped on it are exactly one year apart.  Clerical error is the most reasonable explanation for the discrepancy.  (See, e.g., People v. Barnes (1990) 219 Cal. App. 3d 1468, 1472, fn. 3 ["The motion bears the clerk's filing stamp of January 25, 1988, but the motion is dated January 25, 1989, and it is clear from the sequence of events in the record that the correct date for that motion is 1989; this is only a clerical error."]; Price v. Grayson (1969) 276 Cal. App. 2d 50, 54 ["This second delay without any activity was interrupted on April 1, 1968, by defendant who, miscalculating the time through a clerk's error in affixing the filing date to her copy of the complaint (the stamp shows 1963 instead of 1964), filed a motion to dismiss."].)

Our conclusion is bolstered by the fact that an April 4, 2011 filing date fits the sequence of events in the record.  Two plausible scenarios support an April 4, 2011 filing date; none support an April 4, 2010 filing date.

The form states on its face that it was made "pursuant to Article IV(a) of the [IAD]."  It also states that the district attorney "propose[d] to bring this person to trial ... within the time specified in Article IV(c) of the IAD."  This language suggests to us that defendant's transfer was initiated not by defendant under article III of the IAD but instead by the district attorney under article IV.  (§ 1389, art. IV.)  Pesenhofer signed the request on April 1, 2011; Judge Roberts approved it, and it was presumably then sent to Texas.  (§ 1389, art. IV, subd. (a).)  Defendant arrived in California approximately 11 weeks later.  The 11-week interim would have given the Texas prison authorities time to make arrangements for his transfer and, more importantly, to comply with the IAD's requirement of a 30-day waiting period "after receipt by the appropriate authorities [of a prosecutor-initiated request] before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody. . . ."  (§ 1389, art. IV, subd. (a).)  Defendant's trial commenced

on August 15, 2011, eight weeks after his arrival and, therefore, well within the 120-days-after-arrival limitations period that the IAD prescribes for prosecutor-initiated transfers. (§ 1389, art. IV, subd. (c).)

Defendant's own assertions suggest an alternative scenario that also fits the sequence of events in the record. Defendant claimed to have made a "second" IAD request in early 2011. In his motion papers, he asserted that he "[f]inally . . . decided to cause delivery himself to Monterey County of his IAD request. . . . On February 22, 2011, Monterey County received [this] personally served notice of request for final disposition pursuant to [the] IAD and caused [defendant] to be delivered to the State of California. . . ." Defendant's claimed second request is not in the record, but there are references to it. At a trial-setting conference on July 1, 2011, for example, his trial counsel referred to "the 1389 that has been accepted by the District Attorney" and stated that "[o]n the 1389 demand that was received by the District Attorney, the last day [to try the case] would . . . be [August] 20th. . . .".

The IAD requires that a defendant be brought to trial within 180 days after the court and the prosecuting authority actually receive a prisoner-initiated IAD transfer request. (§ 1389, art. III, subd. (a); <u>Fex</u>, <u>supra</u>, 507 U.S. at p. 52.) August 20, 2011, which the defense asserted was the "last day" to try the case under section 1389, is 180 days after February 22, 2011, the date on which defendant claimed the district attorney "accepted" his IAD request.

The record thus supports a conclusion that the form request for temporary custody was triggered either by the district attorney or by an IAD request that defendant initiated in 2011 rather than "in February or March 2010." Defendant's reliance on the form to support his section 1389 motion was therefore misplaced. There was no evidence to support his claim that he invoked the protection of the IAD in 2010. The trial court properly denied defendant's motion. (<u>E.g.</u>, <u>People v. Garner</u> (1990) 224 Cal. App. 3d 1363, 1370-1371 [section 1389 motion properly denied where, among other things, "[t]he record here shows neither the October nor November

Northern District of California
United States District Court

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

request was presented to the warden"];
<u>Brooks</u>, supra, 189 Cal. App. 3d at p. 869
[section 1389 motion properly denied where,
among other things, there was "no evidence
the Oregon State Penitentiary authorities
completed the certificate required to
accompany Brooks's IAD request."].)

It follows that there was no violation of
defendant's constitutional rights. (<u>People
v. Osband</u> (1996) 13 Cal. 4th 622, 675
["Because there was no state law error,
neither was there any predicate for a
constitutional violation."].)"

<u>Carrillo</u>, 2014 WL 69041, at *3-6.

The Supreme Court has held that habeas review under Article IV(c) of the IAD is not available unless the error qualifies as a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." <u>Reed v. Farley</u>, 512 U.S. 339, 348 (1994) (alteration in original) (citing <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962). The Court found that a technical violation of the 120-day speedy trial rule in Article IV(c) of the IAD is not cognizable "when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement." <u>Id</u>. at 342. However, stating that the facts gave it "no cause to consider" whether it would confront such a violation "if a state court, presented with a timely request to set a trial date within the IAD's 120-day period, nonetheless refused to comply with Article IV(c)," the Supreme Court expressly reserved the question of whether federal habeas review is available to check speedy trial prescriptions when the state court disregards timely pleas for their application. <u>Id</u>. at 349.

1    In several pre-Reed and pre-AEDPA cases examining the speedy

2    trial and "anti-shuttling" provisions of the IAD, the Ninth

3    Circuit split on the issue of whether particular violations of

4    the IAD warrant habeas relief.  In Cody v. Morris, 623 F.2d 101,

5    102-03 (9th Cir. 1980), the court found the speedy trial

6    violation under section IV(c) of the IAD was cognizable on habeas

7    review.  Examining the anti-shuttling provision of Article IV(e)

8    of the IAD, the Ninth Circuit has held that violation of that

9    provision is not a fundamental defect warranting habeas relief.

10   See Hitchcock v. United States, 580 F.2d 964, 966 (9th Cir.

11   1978).  In Carlson v. Hong, 707 F.2d 367, 368 (9th Cir. 1983),

12   the Ninth Circuit followed Hitchcock in holding that a violation

13   of Article IV(e)'s anti-shuttling provision does not give rise to

14   a cognizable claim under § 2254 as the violation does not rise to

15   the required level of seriousness under the fundamental defect

16   test of Hill.

17   Assuming that Petitioner's IAD claim is cognizable on

18   federal habeas reviews, he is not entitled to relief.  The

19   California Court of Appeal conducted an extensive review of the

20   record and found that Petitioner's rights had not been violated

21   by any noncompliance with the IAD.  The state court's finding was

22   not an unreasonable application of Supreme Court authority or an

23   unreasonable determination of the facts.  The state court

24   discussed in detail Petitioner's allegations that he submitted

25   notice in early 2010 directly to the district attorney, who did

26   not receive it, and the court found that even if these letters

27   had been sent they were not in accordance with IAD procedures.

28   IAD procedures require the notice to be sent via the warden of

United States District Court
Northern District of California

the Texas prison where Petitioner was being held.

The state court also found Petitioner's arguments that he submitted the proper forms to the Texas warden to be equally unavailing.  Petitioner stated that an affidavit from a Texas prison employee verifying that Petitioner had submitted the paperwork would be provided to the trial court to demonstrate his compliance.  Clerk's Transcript ("CT") at 210.  There is no indication this affidavit was every submitted to the trial court and it was not part of the record before the California Court of Appeal.  Carrillo, 2014 WL 69041, at *4.

The California Court of Appeal also noted that Petitioner conceded that the Texas prison had no information about his IAD request allegedly made in early 2010.  Id.  Ultimately, the state court found that after reviewing the record it was more likely that Petitioner submitted his request in early 2011 and that he was timely brought to California for trial.  These determinations were not unreasonable.

A review of the record shows that in January 2010, the Texas Department of Criminal Justice (TDCJ) sent a letter to Monterey County and Santa Cruz County indicating that Petitioner was in custody in Texas and was wanted by those counties.  CT at 218. 220.  The TDCJ provided Petitioner with information on how to request disposition of the detainer pursuant to the IAD.  CT at 217, 219.  Petitioner requested disposition of the detainer in Santa Cruz County, and the detainer was cancelled on August 9, 2010.  CT at 223.

Yet, Petitioner's arrest in Santa Cruz County is not at issue in this petition.  Petitioner argues that his request of

United States District Court
Northern District of California

disposition of the detainer in Santa Cruz County shows that he also requested disposition of the detainer in Monterey County in 2010 as opposed to 2011, the year which the state court found he requested it.  That he followed the proper procedures with Santa Cruz County in 2010 does not demonstrate that he must have done the same with Monterey County.  Petitioner offers no explanation why there is proof of the Santa Cruz County request, but no paperwork or proof regarding his requests for the Monterey County detainer.  Petitioner's requested disposition of the detainer in Santa Cruz County may support his argument that he also followed suit in Monterey County in 2010, but Petitioner has failed to meet his burden in rebutting the presumption of correctness of the state court's finding because he has not presented clear and convincing evidence to the contrary.  See 28 U.S.C. § 2254 (e)(1).

Even assuming there was a violation of the IAD, Petitioner has failed to show that he suffered prejudice from any delay. During trial, Petitioner stated to the trial court, outside of the presence of the jury, "I have no defense, no witnesses on my behalf, so it's useless.  That's why I asked [trial counsel] not to even put on a defense, just to let her do what she has to do and get this over with." RT at 609.  Nor did Petitioner present any arguments in the petition addressing how any delay prejudiced him or his ability to present a defense.

To the extent Petitioner raises a violation of his right to a speedy trial independent of the IAD, he is not entitled to relief.  A speedy trial is a fundamental right guaranteed the accused by the Sixth Amendment to the Constitution and imposed by

the Due Process Clause of the Fourteenth Amendment on the states. Klopfer v. North Carolina, 386 U.S. 213, 223 (1967).  No per se rule has been devised to determine whether the right to a speedy trial has been violated.  Instead, courts must apply a flexible "functional analysis," Barker v. Wingo, 407 U.S. 514, 522 (1972), and consider and weigh the following factors in evaluating a Sixth Amendment speedy trial claim: (1) length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.  Doggett v. United States, 505 U.S. 647, 651 (1992); Barker, 407 U.S. at 530. Looking at all these factors, Petitioner is not entitled to relief.  The record does not support Petitioner's argument that he asserted a speedy trial violation when he states he did and he was promptly transferred to California for trial when the proper procedures were followed.  Moreover, there was no prejudice as discussed above.  For all these reasons, this habeas petition is denied.

V

Petitioner has also filed a motion for discovery and a motion for an evidentiary hearing.  In the motion for discovery, Petitioner requests the Court to review evidence he submitted on June 22, 2015.  The majority of this evidence is already part of the Clerk's Transcript.  See, e.g. CT at 217-23.  Petitioner includes letters from TDCJ to Santa Cruz County in which Petitioner requested a disposition of the detainer (Docket No. 19 at 11, 14), but a similar letter is already part of the record (CT at 223).  Petitioner's motion contains no additional evidence regarding Monterey County that would be relevant to his petition.

United States District Court
Northern District of California

1   The motion is denied.

2       Petitioner has also requested an evidentiary hearing.  In
3   <u>Cullen v. Pinholster</u>, 563 U.S. 170 (2011), the United States
4   Supreme Court held that federal review of habeas corpus claims
5   under § 2254(d)(1) is "limited to the record that was before the
6   state court that adjudicated the claim on the merits."  563 U.S.
7   at 181.  Therefore, evidence introduced at an evidentiary hearing
8   in federal court may not be used to determine whether a state
9   court decision on the merits of a petitioner's habeas claim
10  violates § 2254(d).  <u>Id</u>. at 182.  Following the decision in
11  <u>Pinholster</u>, the holding of an evidentiary hearing in a federal
12  habeas proceeding is futile unless the district court has first
13  determined that the state court's adjudication of the
14  petitioner's claims was contrary to or an unreasonable
15  application of clearly established federal law, and therefore not
16  entitled to deference under § 2254(d)(1), or that the state court
17  unreasonably determined the facts based upon the record before
18  it, and therefore deference is not warranted pursuant to §
19  2254(d)(2).

20      The Ninth Circuit has also recognized that <u>Pinholster</u>
21  "effectively precludes federal evidentiary hearings" on claims
22  adjudicated on the merits in state court.  <u>Gulbrandson v. Ryan</u>,
23  738 F.3d 976, 993 (9th Cir. 2013); <u>see</u> <u>also</u> <u>Sully v. Ayers</u>, 725
24  F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court has
25  declined to decide whether a district court may ever choose to
26  hold an evidentiary hearing <u>before</u> it determines that § 2254(d)
27  has been satisfied, an evidentiary hearing is pointless once the
28  district court has determined that § 2254(d) precludes habeas

United States District Court
Northern District of California

relief.") (internal quotation marks and citation omitted).

Petitioner does not sufficiently articulate why an evidentiary hearing is needed, and the Court can discern no reason why one would be necessary.  He wishes to call witnesses who may have testimony that is helpful and he seeks to introduce documents.  The documents he has submitted have already been discussed above.  He does not describe the existence of other documents that are necessary.  Moreover, this Court has already determined that the state court's decision was not contrary to or an unreasonable application of clearly established federal law.  Nor was it an unreasonable determination of the facts.  Therefore, petitioner's motion for an evidentiary hearing is denied.

VI

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  Petitioner's motion for discovery (Docket No. 32) and motion for an evidentiary hearing (Docket No. 35) are DENIED for the reasons discussed above.

Further, a Certificate of Appealability is DENIED.  See Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals for the Ninth Circuit under Rule 22 of the Federal Rules of Appellate

United States District Court
Northern District of California

1    Procedure.  <u>See</u> Rule 11(a) of the Rules Governing Section 2254

2    Cases.

3         The Clerk is directed to enter Judgment in favor of

4    Respondent and against Petitioner, terminate any pending motions

5    as moot and close the file.

6         IT IS SO ORDERED.

7    Dated: 5/4/2016

8                                        _____

9                                        THELTON E. HENDERSON
                                         United States District Judge

10   G:\PRO-SE\TEH\HC.15\Carillo0997.hc.docx

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California